**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

      v.                                           09-M-42

**JODY MCNUTT,**

      **Defendant.**
_____

## DECISION AND ORDER

In accordance with Title 28, United States Code, Section 636(a)(3) and Title 18, United States Code, Section 3401, the undersigned has the authority and jurisdiction to conduct all proceedings in this matter, including trial.

On March 10, 2010, following a plea of guilty to possession of cocaine base, in violation of Title 21, United States Code, Section 844(a), this Court sentenced the defendant, Jody McNutt, to one (1) year probation, to include, *inter alia*, substance abuse testing and treatment. Presently before this Court is an Amended Petition for Offender Under Supervision seeking the revocation of defendant's term of probation. A Probation Violation hearing was held on August 24, 2011. In support of the Amended Petition for Offender Under Supervision, the government submits that it has proven the charges in the petition to the reasonable satisfaction of the Court and asserts that a term of incarceration would be appropriate in light of the factors set forth in Title 18, United States Code, Section 3553(a). For the reasons set forth below, this Court finds

that the government has failed to prove the charges in the Amended Petition to this Court's reasonable satisfaction. Accordingly, the Amended Petition for Offender Under Supervision is denied and the charges in the Amended Petition are dismissed.

## BACKGROUND

On March 10, 2010, this Court sentenced defendant McNutt to a one (1) year term of probation following her plea of guilty to possession of cocaine base in violation of Title 21, United States Code, Section 844(a). Dkt. #266. A special condition of defendant's term of probation was substance abuse testing and treatment. *Id*. As a result of continued cocaine use, on March 2, 2011, defendant's term of probation was extended one (1) year from the date of her February 16, 2011 appearance before this Court and defendant McNutt was ordered to enter the Hope Haven inpatient substance abuse treatment program. Dkt. #289. Following discharge from the inpatient treatment program, defendant was further ordered to enter a drug halfway house for at least three months. *Id*.

On April 15, 2011, after having been notified of circumstances preventing her from entering a drug halfway house, including the inability to pay for the cost of placement and her counselor's recommendation that she enter outpatient treatment, this Court rescinded that portion of its prior Order directing that defendant McNutt enter a drug halfway house for at least three months. Thereafter, this Court modified its prior Order and directed that defendant McNutt be placed in the United States Probation Office's random drug testing program. This Court's Order further stated, "[t]here will be

ZERO tolerance for any drug use, failing to report for random drug testing and any missed substance abuse treatment appointments." Dkt. #290, p.2.

On July 18, 2011, based on a Petition for Offender Under Supervision (Dkt. #293) charging defendant McNutt with violating the terms and conditions of her probation, *to wit*, a June 27, 2011 positive test for cocaine, this Court directed that a Summons be issued for a violation hearing. *Id*. Defendant McNutt appeared before this Court on July 28, 2011 for an initial appearance on the Petition and a violation hearing was scheduled for August 24, 2011. Specifically, the Petition alleged two charges and set forth the following detail relating to the alleged conduct as it pertained to both charges:

> On 6/27/11, this officer [U.S. Probation Officer Assistant Corey M. Ricca] and U.S. Probation Officer Melissa Colley made an unannounced field contact at the subject's residence. The subject was asked to provide a urine sample for drug testing but reported she was not able to provide a sample. This officer placed a sweat patch on the subject, which also tests for any use of controlled substances. On 6/29/11, the subject reported to the U.S. Probation Office as instructed and the sweat patch was removed and sent to the lad [sic] for testing. On 7/10/11, this officer received notification that the patch tested positive for cocaine.

Dkt. #295, p.2. Thereafter, on August 2, 2011, this Court directed that a further Summons be issued for a violation hearing pursuant to an Amended Petition for Offender Under Supervision. Dkt. #295. The Amended Petition added a third charge concerning missed substance abuse treatment appointments on July 21, 2011 and July 26, 2011. Dkt. #295.

The Court conducted a violation hearing on the charges set forth in the Amended Petition for Offender Under Supervision on August 24, 2011. During the hearing, United States Probation Officer Assistant Corey M. Ricca testified for the government and presented evidence that the defendant submitted to a sweat patch test for the presence of controlled substances in her system on June 27, 2011, which later tested positive for the presence of cocaine. In addition, the government presented evidence that the defendant had similar positive drug test results on August 6, 2010, October 27, 2010, November 2, 2010 and December 23, 2010. Finally, U.S. Probation Officer Assistant Corey Ricca testified that defendant's drug treatment counselor advised him that the defendant failed to attend two substance abuse treatment appointments in July 2011. In its post-hearing memorandum of law, the government submits that it has proven the charges in the [Amended] Petition for Offender Under Supervision to the reasonable satisfaction of the Court and further that the Court should revoke defendant's term of Probation and impose a term of incarceration. Dkt. #298, p.4.

Ms. McNutt testified in her own defense and presented evidence that her positive sweat patch test for cocaine in June 2011 was the result of environmental contamination, not actual drug use. In her defense, Ms. NcNutt argues that it is undisputed that her husband smokes crack cocaine in their home. In addition, Ms. McNutt has adamantly denied using cocaine, or any other drug, since her release from Hope Haven in March 2011. In fact, her prior positive drug test results submitted by the government in support of the instant charges all pre-dated her in-patient treatment at

Hope Haven. The defendant further asserts that her adamant denial that she used cocaine in June 2011 is bolstered by the results of a urinalysis administered by a prospective employer on June 30, 2011, only one day after her sweat patch test was removed on June 29, 2011. The urinalysis was negative for cocaine. Indeed, the defendant was hired by this employer and is presently working for them as a health care aide. In her post-hearing memorandum of law, defendant McNutt argues,

> [t]he urinalysis administered by her employer shows a negative for cocaine metabolites in the urine, and uses the same cutoff value, 150 ng/ml, that Officer Ricca testified was used in the Probation Office's urinalysis drug tests. (Defendant's Exhibit A). Furthermore, since her successful completion of the Hope Haven drug treatment program, Ms. McNutt has tested negative for cocaine (and all other controlled substances) at all urine tests given by her outpatient drug counselor. (Defendant's Exhibit D, showing negative results for cocaine on March 28, 2011; April 7, 2011; June 2, 2011; and July 11, 2011).

Dkt. #297, p. 5. Finally, defendant McNutt testified that her failure to attend a July 21, 2011 substance abuse treatment appointment was inadvertent and that she had to pick up her son. With respect to the July 26, 2011 appointment, Ms. McNutt testified that she had advised her probation officer and her drug counselor that she did not have transportation to that appointment and would not be able to attend. In her post-hearing memorandum of law, Ms. McNutt maintains that she regrets having missed the two appointments, however, she submits that she had legitimate reasons for failing to attend and has made a concerted effort to attend all subsequent appointments. *Id*. at p.6.

## DISCUSSION AND ANALYSIS

Rule 32.1 of the Federal Rules of Criminal Procedure governs probation revocation proceedings, and a defendant is entitled to: written notice of the alleged violations; disclosure of the evidence against him/her; an opportunity to appear, present evidence and question adverse witnesses; a right to counsel and an opportunity to make a statement and present mitigation evidence. Disposition of the case is governed by Title 18, United States Code, Sections 3563 and 3565 and Fed. R. Cr. P. 32.1(b)(2) and (d). If the court finds that the defendant violated his/her probation, the court must consider the applicable sentencing factors recited in Title 18, United States Code, Section 3553(a), and either "(1) continue [the defendant] on probation, with or without extending the term or modifying or enlarging the conditions; or (2) revoke the sentence of probation and resentence the defendant under subchapter A [18 U.S.C. §§ 3551 et. seq.]." 18 U.S.C. § 3565(a)(1–2) (alteration added).

At the hearing, the government carries the burden of persuasion, while the ultimate decision is whether the court is reasonably satisfied that the probationer has violated the terms of probation. *United States v. Taintor*, No. 7:01-CR-219 (TJM), 2003 WL 144811, at *6 (N.D.N.Y. Jan. 17. 2003)*; United States v. Parker*, 952 F.2d 31, 33 (2d Cir. 1991); *United States v. Lettieri*, 910 F.2d 1067, 1068 (2d Cir.1990); *United States v. Nagelberg*, 413 F.2d 708, 709–10 (2d Cir.1969). The principle legal issue before this Court is the reliability of the sweat patch test, in light of the possibility for environmental contamination, the defendant's adamant denial of drug use in June

2011, as well as the negative urinalysis one day after the "positive" sweat patch was removed.

As noted above, the defendant asserts that her positive sweat patch test for cocaine on June 27-29, 2011 was the result of environmental contamination, not actual drug use. Indeed, the defendant states:

> [i]t is uncontested that Ms. McNutt's husband smokes crack-cocaine in their home. At the hearing, Officer Ricca testified that Ms. McNutt had told him about this and that he was concerned about her living in a home with a crack-cocaine user. Ms. McNutt testified that her husband regularly smoked crack-cocaine in their home. She has asked him to stop, but he will not. She testified that she would leave the room whenever he was using, but that she continued living in the same house.

Dkt. #297, p.4. Moreover, unlike her prior admission to using cocaine in the past, here, Ms. McNutt adamantly denies using cocaine or any other drug. Indeed, with the exception of the June 27, 2011 test, since her release from the Hope Haven drug treatment program, all of defendant McNutt's drugs tests have been negative. Adding further support to the defendant's adamant denial is the negative urinalysis test administered by a prospective employer just one day after the sweat patch was removed on June 29, 2011. Although both the government and the defendant agree that the sweat patch test is generally reliable, the defendant has supplied the Court with a 2003 published scientific study concerning claims that environmental contamination could cause the sweat patch test to yield a false positive result, as well as the 2004 comments to revisions to the Mandatory Guidelines for Federal Workplace Drug Testing Programs submitted by the National Federation of Federal Employees. As

recited by the defendant, "[t]he [2003] study ultimately concluded that the PharmChek sweat patch could yield false positive results for cocaine from sources other than drug use, and in particular, from environmental contamination." Dkt. #297, p.2.

Both the government and the defendant discuss a decision from the Northern District of New York, *United States v. Snyder*, 187 F.Supp.2d 52 (N.D.N.Y. 2002), where the Court held that the sweat patch test is generally reliable for drug testing purposes, but acknowledged that it is susceptible to environmental contamination in limited situations. The Court in *Snyder* reasoned that if an offender is exposed to a source of drugs for contamination, the drugs may penetrate the sweat patch from the outside, through the non-occlusive membrane. More specifically, the Court stated,

> [i]n order for this to occur, the drugs must be part of a basic solution (i.e., a solution with a pH greater than 7) that penetrates the membrane. A combination of drugs, an additional chemical and water can create such a solution. If the additional chemical is basic, the resulting basic solution could penetrate the exterior of the sweat patch and wet the absorbent pad. Once the water evaporates through the non-occlusive membrane, the drugs will remain in the absorbent pad, despite the fact that they originated from outside of the sweat patch and not from within the offender's body. A potential source of the water required to create a basic solution is profuse sweating. When an offender sweats profusely, the absorbent pad on the inside of the sweat patch may become saturated, allowing the outside of the patch to also become moistened with sweat. This moisture, combined with drugs and an additional chemical present on the exterior of the patch can create a basic solution that can penetrate the non-occlusive membrane.

*United States v. Snyder*, 187 F.Supp.2d 52, 60 (N.D.N.Y. 2002). Like defendant McNutt here, Snyder lived with a family member who smoked crack cocaine in the home. There was also evidence that Snyder worked in a manual labor job where he would sweat profusely. Thus, the Court in the Northern District of New York concluded that defendant Snyder's positive sweat patch results fell within the limited exception to the general reliability of the sweat patch and therefore, further concluded that defendant Snyder's exposure to drugs in his environment and profuse sweating is a sufficient basis for rejecting the reliability of the sweat patch.

Here, there is no dispute that defendant McNutt lives in an environment where her husband regularly uses crack cocaine. That fact, coupled with the fact that she adamantly denies using any drug since her release from Hope Haven (where she previously had admitted to using), that all of her drug tests since her release from Hope Haven have been negative and that she passed a urinalysis one day after the sweat patch was removed, gives this Court sufficient reason to question to reliability of the June 2011 positive sweat patch test result. With respect to the charge in the Amended Petition concerning defendant McNutt's failure to attend two substance abuse treatment appointments, the Court finds that the defendant has offered legitimate explanations for each of the missed appointments. Moreover, because this Court has been advised that the defendant remains gainfully employed and has continued to attend her substance abuse treatment appointments as scheduled, it appears to this Court that those two missed appointments were isolated incidents.

## **CONCLUSION**

For the foregoing reasons, this Court finds that the government has failed to prove the charges in the Amended Petition for Offender Under Supervision to the reasonable satisfaction of the Court.  Accordingly, the Amended Petition for Offender Under Supervision is denied and the charges in the Petition are dismissed.

**SO ORDERED.**

DATED:   Buffalo, New York
         December 7, 2011

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**